# IN THE COURT OF APPEALS OF IOWA

No. 16-0144
Filed March 23, 2016

**IN THE INTEREST OF C.H.,**
**Minor Child,**

**J.P., Mother,**
Appellant,

**S.H., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

The mother and father appeal the adjudication order of the district court finding their child, C.H., remains in need of assistance. **AFFIRMED ON BOTH APPEALS.**

William P. Baresel of Prichard Law Office, P.C., Charles City, for appellant mother.

Danielle M. DeBower of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles City, for appellant father.

Thomas J. Miller, Attorney General, and Janet Hoffman and Mary Triick, Assistant Attorneys General, for appellee State.

Cynthia Schuknecht of Noah,Smith & Schuknecht, P.L.C., Charles City, attorney for minor child C.H.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**VOGEL, Judge.**

The mother and father separately appeal the dispositional order of the district court finding their child, C.H., should remain adjudicated a child in need of assistance (CINA). They assert the State failed to prove by clear and convincing evidence C.H. was imminently likely to suffer abuse or neglect or was not receiving adequate care, as required for an adjudication pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2015). We conclude the evidence establishes the district court properly found C.H. to be in need of assistance, given the volatility of the parents' relationship and continued concern over the father's relapse on methamphetamine and its effect on the family. Consequently, we affirm the dispositional order of the district court.

The mother's older child C.L.[1]—C.H.'s half-sibling—came to the attention of the Iowa Department of Human Services (DHS) in May 2015, when the mother was pregnant with C.H. DHS noted concerns the mother and C.H.'s father were in a violent relationship and they had likely relapsed on methamphetamine. C.L. was adjudicated CINA and removed from the mother's care.

C.H. was born in early November 2015. There were ongoing concerns regarding the father's abuse of methamphetamine, and while C.H. was still in the hospital, a temporary removal order was entered with regard to the father. C.H. was placed with the mother where he has remained since birth. DHS requested the father submit a drug test, but he did not show up to several of the scheduled testings, citing personal and work-related reasons. The father denied he used

---

[1] While the underlying CINA proceedings included both C.H. and C.L., this appeal only concerns C.H.

methamphetamine in the past six months but stated he had smoked marijuana more recently. He finally submitted to a hair stat test on December 1, 2015.

On December 2, a hearing was held and C.H. was adjudicated CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (n). C.H. continued his placement with the mother but remained out of the father's care. On December 7, before the dispositional hearing, the father's drug test came back negative. Also following the adjudication, the mother and father agreed to follow the recommendations of DHS and made progress on their reunification plan such that by late December 2015, the father was able to have four hours of unsupervised contact with C.H. on a daily basis. The father regularly participated in visitation.

The record included evidence of domestic violence in the home, in which the father abused the mother with C.L. present. Additionally, the father suffers from mental health issues, which include ADHD and bipolar disorder. To assist in reunification, the following services were offered to the mother and father: family safety, risk, and permanency services; substance abuse and mental health treatment; drug testing; supervised visitation; sibling visits; transportation assistance; and family team meeting referrals. Neither party requested additional services.

A dispositional hearing was held on January 7, 2016, after which the district court ordered C.H. to remain adjudicated CINA, pursuant to Iowa Code section 232.2(6)(c)(2) and (n), and continued placement with the mother. A review hearing was scheduled for March 17, 2016. Though C.L. is not a party to this proceeding, the district court took judicial notice of C.L.'s CINA case file,

relying in part on the facts contained in that proceeding when adjudicating C.H. CINA. The mother and father appeal.[2]

We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). Though we are not bound by the district court's findings of fact, we give them weight. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). Our primary concern is the child's best interests. *J.S.*, 846 N.W.2d at 40.

To adjudicate the child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2), the State must show the parent failed to exercise a reasonable degree of care in supervising the child, resulting in the child suffering harm or being in imminent danger of suffering harm. Iowa Code § 232.2(6)(c)(2). Under paragraph (n), the State must establish the parent's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care. *Id.* § 232.6(n).

In its December 2, 2015 adjudicatory order, the district court found the father:

> has dodged Hair Stat testing for a month. He has a lengthy list of inadequate excuses to justify his failure to follow through with things. He finally completed a substance abuse evaluation on December 1, 2015, and submitted a Hair Stat test [on December 6]. He complains of not being able to live with his family but has not met a single expectation of this Court.

Then, in the January 7, 2016 dispositional order, the district court found as to the father:

> In particular [the DHS worker] is concerned about [the mother's] potential relapse if [the father] isn't committed to recovery and how easily [the father] becomes irritated, agitated and defensive, which

---

[2] The guardian ad litem filed a brief stating she joined in the State's defense of the adjudication order.

escalates conversations rapidly. This has been seen by the Court as well, and is concerning regarding his ability to contribute positively to a safe, stable home environment for [C.L. and C.H.].

With respect to the mother, on January 7, the district court found:

[The mother] continues to struggle with prioritizing her children, especially [C.L.], over her relationship with [the father]. For instance, on October 7 she was very open with [DHS workers] about her past use, concerns that [the father] was using drugs and a desire to find alternative housing and possibly end their relationship. She was able to articulate some of the safety concerns the Department has with her relationship and described it as "flip floppy." However, by the end of October she had been given the opportunity to have [C.L.] with her for extended visits of 13 of 14 nights, but declined to take advantage of that opportunity because she was "torn" by her desire to have [the father] with her.[3]

Upon our de novo review, we agree with the district court the record establishes C.H. was appropriately adjudicated CINA pursuant to both paragraphs. While the parents are correct in their assertion that methamphetamine use alone is not enough to adjudicate a child CINA under paragraph (n), that is not the circumstance present here. *See, e.g.*, *J.S.*, 846 N.W.2d at 42 (holding methamphetamine abuse alone is not enough to adjudicate a child CINA pursuant to paragraph (n)). Rather, as to the father, the record establishes he would not be able to adequately care for C.H. based on the evidence regarding the father's recent past abuse of the mother, as well as the continued volatility of their relationship. While the father has begun participating in recommended services, his mental health issues remained a concern at the adjudicatory and dispositional hearings. The DHS report to the court cited these issues when recommending C.H. remain adjudicated CINA. Therefore, adequate

---

[3] Following the same dispositional hearing C.L. was returned to the mother's care, but the court ordered any visitation between C.L. and C.H.'s father to be supervised.

grounds were proven establishing C.H.'s adjudication pursuant to Iowa Code section 232.2(6)(n) should continue.

The State further showed C.H. would be subjected to harmful effects as a result of the father's inadequate care if he were left without DHS supervision. We commend both the mother and the father for complying with services, making progress, and being motivated to continue their efforts to reunite the family. However, we agree with the district court the evidence established that C.H.'s adjudication under paragraph (c)(2) should remain, as there continues to be concerns regarding the volatile relationship between the parents and their subsequent vulnerability to relapsing on methamphetamine.[4] *See* Iowa Code § 232.2(6)(c)(2); *see also J.S.*, 846 N.W.2d at 41–42 (noting the mother's active methamphetamine use resulted in a failure to exercise reasonable care pursuant to section 232.2(6)(c)(2), as she could not properly care for a child while under the influence of methamphetamine). As the district court concluded, "[T]he problems for which the Court became involved have not resolved." Thus, it is in C.H.'s best interests that he remain adjudicated CINA pursuant to Iowa Code section 232.2(6)(c)(2). *See J.S.*, 846 N.W.2d at 40 (noting our primary concern is the child's best interests).

Additionally, though the parents argue clear and convincing evidence did not establish grounds for adjudication—in part because the district court relied heavily on C.L.'s recent and ongoing CINA file, and specific evidence with regard

---

[4] While the father argues there was no evidence at the dispositional hearing establishing he was currently using methamphetamine, as well as relying on his negative hair stat test, of note to both the district court and us is his vulnerability to relapse. *See D.D.*, 653 N.W.2d at 361 (noting the appellate court gives weight to the findings of the district court).

to C.H. was not entered—we do not agree. The district court took judicial notice of the filings in the adjudication of C.L., and therefore, all documents noting the conduct of the mother and father were properly before the court. *See In re T.C.*, 492 N.W.2d 425, 429 (Iowa 1992) (noting "[t]he juvenile court was authorized to judicially notice the pleadings and exhibits from the previous child in need of assistance proceeding"). Moreover, the conduct of the parents that led to the adjudication of C.L. and contained in the DHS reports offered in her proceedings are the same circumstances present with regard to C.H., which supports C.H.'s continued CINA adjudication. It was clear to the district court, due to his infancy, that he was particularly vulnerable. As the court commented at the adjudication, "[C.H.] is not in a position to duck or roll over or get out of the way of whatever is going on with the [parents], and so we have to be particularly careful given his inability to self-protect that the two of you are both on the same page."

For these reasons, we affirm the district court's order that C.H. remain a child in need of assistance.

**AFFIRMED ON BOTH APPEALS.**